AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT   ☐ SUPERSEDING

**OFFENSE CHARGED**

COUNT 1: 18 U.S.C. § 1349 — Conspiracy to Commit Bank Fraud

COUNTS 2-18: 18 U.S.C. § 1344 — Bank Fraud

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:  Maximum term of 30 years imprisonment
Maximum term of 5 years supervised release
Maximum fine of $1,000,000
Mandatory special assessment of $100

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

FILED
MAY 15 2014
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

**DEFENDANT - U.S**
AYMAN SHAHID

DISTRICT COURT NUMBER
CR14-00271 JST

**DEFENDANT**

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)
FBI Special Agent Steven Coffin

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   MELINDA HAAG

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Asst U.S. Atty Randy Luskey

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction   ☐ Federal   ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No
If "Yes" give date filed

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT   Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:   Before Judge:

Comments:

# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: Oakland

CR14-00271

UNITED STATES OF AMERICA,

v.

AYMAN SHAHID,

**JST**

FILED
MAY 15 2014
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND



DEFENDANT.

---

**INDICTMENT**

---

18 U.S.C. § 1349 – Bank Fraud Conspiracy;
18 U.S.C. § 1344 – Bank Fraud;
18 U.S.C. § 982 – Bank Fraud Forfeiture

---

A true bill.

_____ Foreman

Filed in open court this 15th day of May, 2014

J. Asre

_____ Clerk 5/15/14

Bail, $ no bail warrant

MELINDA HAAG (CABN 132612)
United States Attorney



FILED
MAY 15 2014
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

CR14-00271 JST

| UNITED STATES OF AMERICA, | ) VIOLATIONS: 18 U.S.C. § 1349 – Bank Fraud |
|---|---|
| Plaintiff, | ) Conspiracy; 18 U.S.C. § 1344 – Bank Fraud; 18 U.S.C. § 982 – Bank Fraud Forfeiture |
| v. | ) OAKLAND VENUE |
| AYMAN SHAHID, | ) |
| Defendant. | ) |

INDICTMENT

The Grand Jury charges:

Introductory Allegations

1.   At all times relevant to this Indictment, defendant AYMAN SHAHID, an individual, managed Discovery Sales, Inc. ("DSI"), first with the title of Vice President of Sales and later as President. SHAHID resided in Contra Costa County, California, and worked at DSI's office in Concord, California.

2.   The purpose of DSI was to sell new homes that had been built by affiliated construction companies, including Discovery Builders, Inc. and Albert D. Seeno Construction Co., Inc. ("Seeno Construction").

3.   DSI had "preferred lender" relationships with Wells Fargo Bank and Chase Bank under which DSI referred potential purchasers to Wells Fargo and Chase for the purpose of obtaining home

INDICTMENT                                          1

1  mortgage loans. DSI also referred potential purchasers to other lending institutions, including Bank of
2  America, Countrywide Bank, and GMAC. Wells Fargo, Chase, Bank of America, Countrywide Bank,
3  and GMAC were federally insured financial institutions.

### The Scheme to Defraud

5  4.  From no later than approximately November 2006 until approximately October 2008,
6  SHAHID and others devised and executed a scheme to defraud various financial institutions and other
7  mortgage lenders by means of materially false and fraudulent pretenses, representations, and promises,
8  and by omissions and concealment of material facts. Specifically, SHAHID and others fraudulently
9  caused financial institutions and other mortgage lenders to make residential home mortgage loans to
10 purchasers of homes sold by DSI based on false and misleading loan applications, and in amounts
11 greater than the properties' true market value. The aggregate sales price of these properties was in
12 excess of $227 million. As a result of the actions of SHAHID and others working with him, mortgage
13 loans having a value in excess of $154 million went into foreclosure or short sale proceedings.

### Means and Methods

15 5.  Prior to 2007, Discovery Builders and Seeno Construction established bank lines of credit
16 from which they could draw funds for the purpose of financing new residential construction projects.
17 The availability of a line of credit was based in part on the sales price of completed homes. SHAHID, as
18 president of DSI, was responsible for selling completed homes.

19 6.  When the real estate market declined in 2007, the price of new homes in Contra Costa
20 County and Alameda County decreased sharply. The 2007 decline in the real estate market raised the
21 prospect that the lines of credit that Discovery Builders and Seeno Construction had established would
22 be decreased or eliminated. SHAHID devised ways for DSI to sell homes at inflated prices for the
23 purpose of shielding Discovery Builders and Seeno Construction from the impact of the downturn.

24 7.  The principal means and methods used by SHAHID and others to accomplish the
25 conspiracy were as follows:

26      a. <u>False promises and representations</u>. SHAHID made material false promises and
27 representations to financial institutions regarding the nature of the incentive programs being used by DSI
28 to induce home buyers to make purchases. SHAHID also made material false representations to

INDICTMENT                               2

financial institutions regarding DSI's policies and practices regarding sales to investors and commissions paid to real estate agents.

    b. <u>Undisclosed simultaneous purchases</u>. SHAHID encouraged and authorized the simultaneous sale of multiple homes to single buyers, funded by loans from different lenders. The sales were timed so that each lender would not know about the other pending sale or sales and would, therefore, not know the borrower's true debt portfolio. The buyers, who included employees of DSI, routinely and falsely represented to the lenders that they would own and occupy each of the residences. SHAHID directed and authorized significant incentives to buyers of multiple homes for the purpose of encouraging them to make the purchases; these incentives were not disclosed to the lenders.

    c. <u>Undisclosed down payment assistance</u>. SHAHID encouraged and authorized the payment of money to home purchasers as down payment assistance so that the purchasers would qualify for mortgage loans. SHAHID understood and agreed that these payments were required to be disclosed to the mortgage lenders. SHAHID further understood that these payments could not be gifts, but were required to be legitimate loans secured by properties other than the new home being purchased. SHAHID, however, concealed these payments from the lenders by, among other things, instructing that they not appear as part of the sales contracts and not be disclosed to appraisers. SHAHID also knew that these payments were essentially gifts rather than legitimate loans, because the borrowers were often not required to pay them back and the purported loans were rarely secured by existing homes. SHAHID knew that lenders would not approve mortgage loans if the true down payment incentive had been disclosed.

    d. <u>Undisclosed mortgage assistance</u>. SHAHID created the "Existing Mortgage Assistance Program" (EMAP) for the purpose of encouraging existing homeowners to buy a DSI property without first selling their existing home. The amount of the monthly payment was supposed to match the actual mortgage due on the existing home. SHAHID and others, however, approved EMAP payments that materially exceeded the buyers' mortgage payments. The EMAP program was to be limited to borrowers who actually owned an existing home. SHAHID and others, however, authorized EMAP payments to buyers who did not own another home. The EMAP payments were not to be sold to investors, but only to buyers who were to occupy the new DSI home. SHAHID, however, authorized

INDICTMENT               3

EMAP payments to borrowers who were making multiple simultaneous home purchases. The EMAP payments were not to exceed $1,500 per month. SHAHID, however, authorized EMAP payments greater than this amount. SHAHID and others intentionally concealed EMAP incentive payments from mortgage lenders because he knew that lenders would not approve loans if the incentives were disclosed.

  e. <u>Undisclosed excessive referral fees</u>. SHAHID authorized the payment of inflated commissions to real estate agents representing purchasers. SHAHID represented to lenders that DSI capped referral fees, also called "co-broker" fees, at 6%. SHAHID, however, routinely approved payments to third-party real estate agents significantly in excess of 6%. SHAHID knew that lenders would not approve loans that involved excessive referral fees to real estate agents. SHAHID instructed DSI employees to conceal these fees from lenders by not including the fees in sales contracts and not informing appraisers of the fees.

  f. <u>Undisclosed gifts to buyers</u>. SHAHID authorized giving gift cards and money payments to home purchasers to provide an incentive for them to purchase DSI homes. These gifts and payments were not disclosed to mortgage lenders.

  8. In furtherance of their scheme, SHAHID and others made material misrepresentations and took steps to conceal material facts from financial institutions, including the following:

  a. On or about January 18, 2007, SHAHID instructed DSI employees that "broker fees should not be noted on addendum."

  b. On or about September 22, 2007, a DSI employee, J.S., at SHAHID'S direction, sent an internal email in which she stated that incentives should not be revealed to appraisers. The email states, "In some cases telling the appraiser that we are giving huge incentives have killed our deals." SHAHID replied to the J.S. email and informed DSI employees that broker fees also should not be revealed to appraisers. A DSI employee, C.H., replied to SHAHID's email and stated, "Offering up incentive information to the appraisers has destroyed the scheduled closings on two homes in the last couple weeks and we have been fighting to get new comps to appraisers this week."

  c. On or about October 15, 2007, a DSI employee, R.V., sent an email to SHAHID and others in which she discussed a simultaneous purchase by a single buyer and expressed concern that the simultaneous purchase would be discovered by one of the lenders.

INDICTMENT              4

1           d. On December 6, 2007, SHAHID sent an email to Wells Fargo in which he made representations regarding DSI's sales policies. SHAHID and DSI did not, thereafter, follow those policies in connection with loans funded by Wells Fargo.

         e. On December 20, 2007, SHAHID sent an email to the DSI sales staff and to Wells Fargo in which he stated that DSI notes would not be forgiven. On December 21, 2007, SHAHID signed a promissory note with a DSI buyer in which he agreed that the down payment loan would be forgiven.

         f. On or about December 27, 2007, SHAHID deleted information regarding an excessive co-broker fee from a sales contract addendum before it was submitted to the lending institution.

         g. On or about March 1, 2008, SHAHID signed a contract with Chase in which he represented that Discovery Homes and Seeno Construction, acting through DSI, would inform Chase in writing of any incentives provided to home purchasers seeking loans from Chase. Thereafter, DSI did not inform Chase in writing of incentives provided to DSI buyers who were applying for Chase mortgage loans.

         h. On or about July 22, 2008, SHAHID authorized the payment of $25,000 to a buyer in lieu of an American Express gift card in the same amount that had been promised to the buyer.

         i. On or about January 25, 2008, SHAHID signed six Warranty of Sales documents to Wells Fargo in which he represented that only two homes in Monte Vista Villas, a new home development, had been sold to a second home/investment purchaser. SHAHID knew that many more than two homes in Monte Vista Villas had been sold to investors who did not intend to use the home as a residence.

         j. SHAHID signed internal sales worksheets for each of the home purchases alleged in Counts 2 through 16, below. The incentive and co-broker payments SHAHID approved for each of these transactions was not disclosed to the financial institutions that funded the loans.

COUNT ONE:       18 U.S.C. §§ 1344 and 1349 (Conspiracy to Commit Bank Fraud)

9. Paragraphs 1 to 8 are realleged and incorporated herein by reference.

10. Between in or about January 2007 and October 2008, in the Northern District of

INDICTMENT                      5

California and elsewhere, the defendant,

AYMAN SHAHID,

and others did knowingly conspire to execute and attempt to execute a scheme and artifice to defraud, and to obtain money from financial institutions and others by means of material false and fraudulent pretenses, representations, and promises, and by omission and concealment of material facts, in violation of Title 18, United States Code, Section 1344, all in violation of Title 18, United States Code, Section 1349.

COUNTS TWO THROUGH SIXTEEN:  18 U.S.C. § 1344 (Bank Fraud)

11. Paragraphs 1 to 8 are realleged and incorporated here by reference.

12. On or about the dates set forth below, in the Northern District of California and elsewhere, the defendant,

AYMAN SHAHID,

did knowingly execute and attempt to execute a scheme to defraud and to obtain money by means of material false and fraudulent pretenses, representations, and promises, and by omissions and concealment of material facts, by procuring and aiding, abetting and willfully causing the following home mortgage loans to be procured from financial institutions for the purchase of DSI homes, in violation of Title 18, United States Code, Sections 1344 and 2.

| Count | Date | Address | Borrower | Financial Institution |
|---|---|---|---|---|
| 2 | April 24, 2007 | 1908 Cinnamon Ridge | S.A. | JP Morgan Chase |
| 3 | October 2, 2007 | 141 Omega Lane | F.S. | JP Morgan Chase |
| 4 | October 26, 2007 | 5003 Havenrock Court | J.M. | JP Morgan Chase |
| 5 | November 1, 2007 | 5213 Star Thistle Way | J.M. | Wells Fargo Bank |
| 6 | November 7, 2007 | 6142 Old Quarry Loop | S.T. | Bank of America / US Bank |
| 7 | February 22, 2008 | 12 Leila Court | G.E. | JP Morgan Chase |
| 8 | March 20, 2008 | 6421 Blue Rock Court | F.C. | Bank of America |
| 9 | April 25, 2008 | 6007 Old Quarry Loop | R.H. | Bank of America |

| 10 | April 30, 2008 | 725 Greentree | D.B. | GMAC |
|----|----|----|----|----|
| 11 | May 16, 2008 | 3840 Stafford Springs Way | C.L. | JP Morgan Chase |
| 12 | May 19, 2008 | 3844 Stafford Springs Way | N.L. | JP Morgan Chase |
| 13 | May 30, 2008 | 1977 Canyon Oaks Circle | C.H. | Wells Fargo Bank |
| 14 | June 26, 2008 | 3852 Stafford Springs Way | C.L. & N.L. | Bank of America |
| 15 | June 30, 2008 | 1981 Canyon Oaks Circle | C.H. | Countrywide Bank |
| 16 | June 30, 2008 | 577 Lexington | D.B. | GMAC |

All in violation of Title 18, United States Code, Section 1344.

COUNT SEVENTEEN: 18 U.S.C. § 1344 (Bank Fraud)

13. Paragraphs 1 to 8 are realleged and incorporated here by reference.

14. On or about November 19, 2007, in the Northern District of California, the defendant,

AYMAN SHAHID,

did knowingly execute and attempt to execute a scheme to defraud and to obtain money by means of material false and fraudulent pretenses, representations, and promises to, and by omissions and concealment of material facts from Bank of America, a financial institution.

15. Specifically, SHAHID applied for a mortgage loan from Bank of America to purchase a home at 1575 Rio Verde Drive, Pittsburg, California. SHAHID received a $147,680 lump sum mortgage assistance payment that he concealed from Bank of America. SHAHID also falsely stated to Bank of America that he had a $100,000 certificate of deposit and provided an altered copy of that certificate of deposit to Bank of America.

16. As a result of this loan application, SHAHID obtained a loan from Bank of America in the amount of $875,084. SHAHID defaulted on the loan and Bank of America suffered a loss of approximately $440,000.

All in violation of Title 18, United States Code, Section 1344.

COUNT EIGHTEEN: 18 U.S.C. § 1344 (Bank Fraud)

17. Paragraphs 1 to 8 are realleged and incorporated here by reference.

18. On or about June 26, 2006, in the Northern District of California, the defendant,

AYMAN SHAHID,

did knowingly execute and attempt to execute a scheme to defraud and to obtain money by means of material false and fraudulent pretenses, representations, and promises to, and by omissions and concealment of material facts from Countrywide Financial, a financial institution.

19. Specifically, SHAHID applied for a mortgage loan from Countrywide to refinance a home at 1138 Santa Lucia Drive, Pittsburg, California. On his loan application, SHAHID falsely claimed to receive $1,800 in monthly rent payments. In support of the loan application, SHAHID submitted a fictitious Monthly Rental Agreement signed by SHAHID and "Pete Presto."

20. As a result of this loan application, SHAHID obtained a loan from Countrywide in the amount of $640,000. SHAHID defaulted on the loan and Countrywide suffered a loss of approximately $300,000.

All in violation of Title 18, United States Code, Section 1344.

FORFEITURE ALLEGATION:     (18 U.S.C. § 982) (Bank Fraud Forfeiture)

21. The factual allegations above are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982.

22. Upon conviction of any of the offenses in violation of Title 18, United States Code, Section 1344 or 1349 set forth in Counts 1 through 18 of this Indictment, the defendant,

AYMAN SHAHID,

shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation(s), and all property traceable to such property.

23. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

INDICTMENT                                      8

1   d.   has been substantially diminished in value; or

2   e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 982(a)(2)(A); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c); and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED: May 15, 2014                              A TRUE BILL.

_____
FOREPERSON

MELINDA HAAG
United States Attorney

_____
J. DOUGLAS WILSON
Chief, Criminal Division

(Approved as to form: _____ )
AUSAs Hemann and Luskey

INDICTMENT                                                9